## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAVIER RODRIGUEZ, JORGE ESQUILIN, HARRY CHARCALIS, and DARREN COUTURIER, individually and on behalf of all persons similarly situated, | Civil Action No.: |
| | COLLECTIVE AND CLASS ACTION COMPLAINT |
| Plaintiffs, | Jury Trial Demanded |
| v. | |
| TRI-WIRE ENGINEERING SOLUTIONS, INC.; COMCAST CORPORATION; and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | |
| Defendants. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

1.     Plaintiffs Javier Rodriguez, Jorge Esquilin, Harry Charcalis, and Darren Couturier (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this lawsuit against Tri-Wire Engineering Solutions, Inc. ("Tri-Wire"), Comcast Corporation, and Comcast Cable Communications Management, LLC (collectively, "Comcast"), as joint employers (collectively, "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219, and applicable Massachusetts, Maine, New Hampshire, New Jersey, and Pennsylvania wage-and-hour laws. The allegations that follow are made on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## INTRODUCTION

2.     Plaintiffs and members of the proposed classes and collectives are current and former non-exempt employees of Defendants, who carried out Defendants' installation service business (hereinafter referred to collectively as "Technicians"). In particular, Plaintiffs seek to

represent other current and former non-exempt employees who work or worked for Defendants as Technicians in the United States. Defendants' unlawful patterns, practices, and conduct described herein apply broadly to members of the proposed collectives, in violation of the FLSA.

3.      Plaintiffs Charcalis and Couturier also seek to represent current and former non-exempt employees who work or worked as Technicians in Maine in this class action, and allege that Defendants have engaged in unlawful patterns, practices, and conduct described herein in violation of Maine's wage-and-hour laws.

4.      Plaintiffs Esquilin, Rodriguez, Charcalis, and Couturier also seek to represent current and former non-exempt employees who work or worked as Technicians in Massachusetts in this class action, and allege that Defendants have engaged in unlawful patterns, practices, and conduct described herein in violation of Massachusetts's wage-and-hour laws.

5.      Plaintiffs Rodriguez, Charcalis, and Couturier also seek to represent current and former non-exempt employees who work or worked as Technicians in New Hampshire in this class action, and allege that Defendants have engaged in unlawful patterns, practices, and conduct described herein in violation of New Hampshire's wage-and-hour laws.

6.      Plaintiff Esquilin also seeks to represent current and former non-exempt employees who work or worked as Technicians in New Jersey in this class action, and allege that Defendants have engaged in unlawful patterns, practices, and conduct described herein in violation of New Jersey's wage-and-hour laws.

7.      Plaintiff Esquilin also seeks to represent current and former non-exempt employees who work or worked as Technicians in Pennsylvania in this class action, and allege that Defendants have engaged in unlawful patterns, practices, and conduct described herein in violation of Pennsylvania's wage-and-hour laws.

8.     Defendants knowingly and improperly fail to pay Technicians for all hours worked, fail to maintain accurate time and payroll records, fail to provide Technicians with accurate time and payroll statements, fail to provide Technicians with genuine, uninterrupted, duty-free meal periods, fail to reimburse Technicians for the necessary expenses that they incurred in order to fulfill Defendants' business requirements, and fail to pay Technicians their agreed-upon compensation in a timely manner and without unlawful deductions. As a result of these failures, Plaintiffs and those similarly situated did not receive minimum-wage, straight-time, or overtime pay as appropriate for all hours worked, did not receive time and payroll statements that accurately reflect their work performed and hours worked, did not receive the meal periods to which they were entitled, and had their take-home pay unlawfully reduced.

## JURISDICTION AND VENUE

9.     Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because those claims derive from a common nucleus of operative facts.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants conduct business in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

12.     Plaintiff Rodriguez is a citizen of Massachusetts and resides in Lawrence, Massachusetts. Plaintiff Rodriguez worked for Defendants as a Technician from December 2018 to April 2020 in and around the Salisbury, Boston, and Woburn regions of Massachusetts; as well as the Laconia region of New Hampshire.

13.     Plaintiff Esquilin is a citizen of New Jersey and resides in Vineland, New Jersey. Plaintiff Esquilin worked for Defendants as a Technician from November 2013 to November 2018, June 2019 to November 2019, and December 2019 to October 2020 in and around Philadelphia, Pennsylvania; Boston, Massachusetts; and numerous locations within New Jersey.

14.     Plaintiff Charcalis is a citizen of New Hampshire and resides in Concord, New Hampshire. Plaintiff Charcalis worked for Defendants as a Technician from September 2017 to May 2020 in and around the Boston and Lawrence regions of Massachusetts; the Concord, Manchester, and Woburn regions of New Hampshire; and the Berwick region of Maine.

15.     Plaintiff Couturier is a citizen of New Hampshire and resides in Manchester, New Hampshire. Plaintiff Couturier worked for Defendants as a Technician from March 2018 to March 2021 at various locations in Maine, Massachusetts, and New Hampshire.

16.     Defendant Tri-Wire is an installation service provider that performs residential and commercial installations, custom wiring, fiber and coaxial splicing, aerial and underground network construction, and commercial networking. It has more than 1,000 employees in 9 states. It is a registered Massachusetts corporation that does business in Maine, Massachusetts, New Hampshire, New Jersey, Pennsylvania, and other jurisdictions. It is headquartered at 890 East Street, Tewksbury, Massachusetts. Tri-Wire may be served with process by serving its registered agent, John R. Wade, III, at 1051A East Street, Tewksbury, Massachusetts.

17.     Tri-Wire employed Plaintiffs and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

18.     Defendant Comcast Corporation is incorporated in Pennsylvania. Its headquarters is in Philadelphia, Pennsylvania. Comcast does extensive business nationwide, including in Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania.

19.     Defendant Comcast Cable Communications Management, LLC, is incorporated in Delaware. It is a subsidiary of Defendant Comcast Corporation. Its headquarters is in Philadelphia, Pennsylvania. Comcast does extensive business nationwide, including in Massachusetts, Maine, New Hampshire, New Jersey, and Pennsylvania.

20.     The unlawful acts alleged in this Complaint were committed by Defendants or their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

21.     At all material times, Defendants have been employers within the meaning of the FLSA under 29 U.S.C. § 203(d).

22.     At all material times, Defendants have been enterprises within the meaning of the FLSA under 29 U.S.C. § 203(r).

23.     At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA because Defendants had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

24.     Plaintiffs and Collective and Class Members, as defined below, were and are employees of Defendants within the meaning of 28 U.S.C. § 203(e) and the respective wage-and-hour laws of Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania.

25.     At all material times, Plaintiffs and Collective and Class members were and are employees who engaged in commerce or in the production of goods for commerce within the meaning of the FLSA under 29 U.S.C. § 207.

26.     Defendants had, and continue to have, annual gross business volumes of not less than $500,000, thereby exceeding the statutory standard. 29 U.S.C. § 203(s)(1)(A)(ii).

## COLLECTIVE AND CLASS DEFINITIONS

27.     Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., working as cable installation technicians throughout the United States during the time period from three years prior to the filing of this Complaint until resolution of this action (the "Collective").

28.     Plaintiffs also bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the United States during the time period from three years prior to the filing of this Complaint until resolution of this action (the "Comcast Collective").

29.     Plaintiffs Charcalis and Couturier bring Counts II, III, and IV (the Maine state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., working as cable installation technicians throughout the State of Maine during the applicable limitations period (the "Maine Class").

30.     Plaintiffs Charcalis and Couturier also bring Counts II, III, and IV (the Maine state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following subclass:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the State of Maine during the applicable limitations period (the "Maine Comcast Subclass").

31.     Plaintiffs bring Counts V, VI, and VII (the Massachusetts state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class:

> All current and former non-exempt employees employed by Tri-Wire Engineering
> Solutions, Inc., working as cable installation technicians throughout the
> Commonwealth of Massachusetts during the applicable limitations period (the
> "Massachusetts Class").

32.     Plaintiffs also bring Counts V, VI, and VII (the Massachusetts state law claims) as

a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the

following subclass:

> All current and former non-exempt employees employed by Tri-Wire Engineering
> Solutions, Inc., and Comcast Corporation or Comcast Cable Communications
> Management, LLC, working as cable installation technicians throughout the
> Commonwealth of Massachusetts during the applicable limitations period (the
> "Massachusetts Comcast Subclass").

33.     Plaintiffs Rodriguez, Charcalis, and Couturier bring Counts VIII, IX, and X (the

New Hampshire state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23

on behalf of themselves and the following class:

> All current and former non-exempt employees employed by Tri-Wire Engineering
> Solutions, Inc., working as cable installation technicians throughout the State of
> New Hampshire during the applicable limitations period (the "New Hampshire
> Class").

34.     Plaintiffs Rodriguez, Charcalis, and Couturier also bring Counts VIII and IX as a

class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the

following subclass:

> All current and former non-exempt employees employed by Tri-Wire Engineering
> Solutions, Inc., and Comcast Corporation or Comcast Cable Communications
> Management, LLC, working as cable installation technicians throughout the State
> of New Hampshire during the applicable limitations period (the "New Hampshire
> Comcast Subclass").

35.     Plaintiffs Rodriguez, Charcalis, and Couturier also bring Count X as a class action

pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following subclass:

> All current and former non-exempt employees employed by Tri-Wire Engineering
> Solutions, Inc., working as cable installation technicians throughout the State of
> New Hampshire who were promised but not paid a sign-on bonus during the

applicable limitations period (the "New Hampshire Contract Subclass").

36.     Plaintiff Esquilin brings Counts XI, XII, and XIII (the New Jersey state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following class:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., working as cable installation technicians throughout the State of New Jersey during the applicable limitations period (the "New Jersey Class").

37.     Plaintiff Esquilin also brings Counts XI and XII as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following subclass:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the State of New Jersey during the applicable limitations period (the "New Jersey Comcast Subclass").

38.     Plaintiff Esquilin also brings Count XIII as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following subclass:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., working as cable installation technicians throughout the State of New Jersey who were promised but not paid a sign-on bonus during the applicable limitations period (the "New Jersey Contract Subclass").

39.     Plaintiff Esquilin brings Counts XIV and XV (the Pennsylvania state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following class:

> All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., working as cable installation technicians throughout the Commonwealth of Pennsylvania during the applicable limitations period (the "Pennsylvania Class").

40.     Plaintiff Esquilin also brings Counts XIV and XV (the Pennsylvania state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following subclass:

All current and former non-exempt employees employed by Tri-Wire Engineering Solutions, Inc., and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the Commonwealth of Pennsylvania during the applicable limitations period (the "Pennsylvania Comcast Subclass").

41.     The Collective and Comcast Collective are together referred to as the "Collectives."

42.     The Massachusetts Class, Massachusetts Comcast Subclass, Maine Class, Maine Comcast Subclass, New Hampshire Class, New Hampshire Comcast Subclass, New Hampshire Contract Subclass, New Jersey Class, New Jersey Comcast Subclass, New Jersey Contract Subclass, Pennsylvania Class, and Pennsylvania Comcast Subclass are together referred to as the "State Law Classes."

43.     The Comcast Collective, Maine Comcast Subclass, Massachusetts Comcast Subclass, New Hampshire Comcast Subclass, New Jersey Comcast Subclass, and Pennsylvania Comcast Subclass are together referred to as the "Comcast Classes" and the members of the Comcast Classes as the "Comcast Class Members."

44.     The Collectives and State Law Classes are together referred to as the "Classes" and the members of the Classes as "Class Members."

45.     Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter, as may be warranted or necessary based upon discovery or otherwise.

<u>JOINT EMPLOYER ALLEGATIONS</u>

46.     Tri-Wire and Comcast are or were the joint employers of Plaintiffs and Comcast Class Members for purposes of this action.

47.     Comcast directs, controls, or supervises, directly or indirectly, the work of Plaintiffs and Comcast Class Members, and thus was or is their joint employer under the FLSA and the respective wage-and-hour laws of Massachusetts, Maine, New Hampshire, New Jersey, and

Pennsylvania.

48.     In particular, Comcast assigns work to Tri-Wire, who in turn assigns that work to Technicians. Comcast monitors and evaluates Technicians' work activities and work progress in real time throughout the course of the day using mobile devices. Comcast requires Technicians to use its application called Tech Net, which was later upgraded to Tech 360, to track Technicians' clock-in and clock-out times and to determine when Technicians are available and when they complete their jobs, which in turn determines Technicians' daily schedules.

49.     Comcast exercises control over and monitors Technicians' schedules, routes traveled, regions covered, availability, and job details. Comcast monitors and controls the manner in which Technicians enter information in various Comcast-controlled devices and applications, including without limitation Tech Net/Tech 360.

50.     All changes to a Technician's daily route, arrival and departure times, and jobs are dictated by Comcast. Comcast is the point of contact for the Technicians.

51.     Comcast directs Technicians' day-to-day activities, individual schedules, hours, and assignments, as well as any re-assignments and instructions to return to sites throughout the course of the day. Comcast monitors every aspect of Technicians' daily work, as Technicians are required to directly communicate with Comcast dispatchers throughout the day. Comcast is in constant and direct communication with Technicians regarding all aspects of their day-to-day work, including without limitation Technician coordination, work orders, productivity, customer complaints, and escalations and investigations of customer complaints. Technicians are further required to obtain the approval of a Comcast dispatcher in order to take a meal break or to conclude work for the day.

52.     Comcast has the power, directly and indirectly, to hire and fire Technicians, change Technicians' employment conditions, and render disciplinary action.

53.     Comcast determines the rate and method of pay for Technicians. Comcast dictates the conditions upon which Technicians can receive payment for job assignments. Further, Comcast can and does change the amount of pay that Technicians receive for a given job at Comcast's sole discretion, and at times refuses to pay a Technician entirely, even after that Technician has completed the job in question under a different pay scale.

54.     Comcast dictates which job codes, if completed by Technicians, will be ultimately paid to Technicians. Comcast and Tri-Wire thus jointly provide wages and overtime to Technicians. The amounts paid by Comcast to Tri-Wire and then paid to the Technicians are insufficient to pay Technicians the lawful wages and overtime due to them.

55.     Comcast and Tri-Wire have contracts in place that grant Comcast the right to control the work conditions afforded to Technicians employed by Tri-Wire. In return for the services provided by Tri-Wire Technicians to Comcast's customers, Tri-Wire receives monetary sums for Technicians' completion of job codes approved by Comcast.

56.     Prior to obtaining employment with Tri-Wire, Technicians are required by Comcast to undergo a background check. Technicians must pass these checks ordered by Comcast in order to be hired by Tri-Wire.

57.     Comcast periodically subjects Technicians to drug screenings throughout their employment. Comcast requires that Technicians pass these tests in order to maintain their employment.

58.     Technicians perform work on Comcast's customers' premises. While Technicians perform this work, Comcast requires them to display Comcast-issued identification badges and to wear uniforms bearing the Comcast logo. Their work vehicles also display the Comcast logo.

59.     Comcast directly or indirectly performs administrative functions connected with

Technicians' employment, including without limitation providing tools and equipment.

60.     Comcast maintains employment records for Technicians, including without limitation work orders, schedules, arrival/departure times, job codes, and rates of payment.

61.     As employers of Plaintiffs and Comcast Class Members, Defendants, and each of them, are solely, jointly, and severally liable for back pay and other economic damages, including statutory penalties, owed to Plaintiffs and Class Members.

<u>FACTUAL BACKGROUND</u>

62.     Tri-Wire provides cable and communication equipment installations on behalf of cable operators, including Comcast.

63.     Since Tri-Wire's establishment in 1999, its operations have grown substantially and, to execute its mission, it now employs Technicians in approximately nine states.

64.     Comcast is an American global telecommunications conglomerate, the largest broadcasting and cable television company in the world by revenue, which totals over $103 billion per year. Comcast is the largest TV cable company and home internet service provider in the United States, and the nation's third-largest home telephone service provider.

65.     Plaintiffs and Class Members currently work or formerly worked for Defendant Tri-Wire as Technicians carrying out Tri-Wire's installation service business.

66.     Plaintiffs and a subset of the Class Members—the Comcast Class Members—currently work or formerly worked jointly for Defendants Tri-Wire and Comcast as Technicians carrying out Defendants' installation service business.

67.     Technicians' job duties include without limitation installing, disconnecting, reconnecting, adding, changing, and troubleshooting cable TV, internet, and telephone equipment; attempting to identify and remedy sources of customer-perceived problems; driving company

vehicles between home, office, warehouse, and work locations; cleaning, maintaining, and stocking vehicles and equipment; and educating customers.

 Working as a Technician for Defendants

68.     Technicians' workdays begin early, typically between 6:00 and 7:00 a.m. Technicians first report to one of Tri-Wire's warehouses, where they gather equipment for the day and organize their vehicles. Technicians who do not have enough equipment on hand must wait in line behind their fellow Technicians to gather additional equipment. On days where Technicians are not required to first report to Tri-Wire's warehouses, Technicians start work directly at their first appointment. Pursuant to Tri-Wire's policy and practice, Technicians are not allowed to clock in prior to arriving at the warehouse or their first appointment, even when they perform work beforehand.

69.     Once all uncompensated pre-shift activity is completed, Technicians receive their job assignments for the day, typically around 7:00 a.m.

70.     Technicians work long hours, typically five to seven days per week, eight to twelve hours per day, and between 45 and 80 hours per week.

71.     In particular, Plaintiff Esquilin typically worked six to seven days per week and ten to fourteen hours per day. It was common for him to begin his day around 6:00 a.m. and to work until or after 7:00 p.m. He averaged 75 hours of work each week.

72.     Plaintiff Rodriguez typically worked five to six days per week and ten to twelve hours per day. It was common for him to begin his day around 7:30 a.m. and to work until or after 6:00 p.m. He often worked between 50 and 72 hours a week.

73.     Plaintiff Charcalis typically worked five to six days per week and nine to eleven hours per day. It was common for him to begin his day around 7:00 a.m. and to work until 6:00

p.m. He often worked between 45 and 65 hours a week.

74.     Plaintiff Couturier typically worked five to six days per week and eight to ten hours per day. It was common for him to begin his day around 7:00 a.m. and to work until 4:00 p.m., and in the summer months, it was common for him to begin his day around 7:00 a.m. and to work until 5:00 p.m. He often worked between 40 and 60 hours a week.

75.     Technicians are generally assigned five to ten jobs per day. Each job entails one or more tasks, *e.g.*, installing a cable, setting up internet service, or creating an electrical outlet.

76.     For each discrete task, Defendants provide Technicians with a corresponding job code. Each job code equals a set dollar amount. Throughout the day, and for each job, Technicians document these codes as they are completed, and then submit them to Defendants so that the Technicians can be compensated accordingly.

77.     Defendants, however, routinely delete codes that Technicians have submitted for completed jobs or change code entries to lower-paying codes. Defendants also pressure Technicians not to submit code entries for some of the tasks that they complete.

78.     Moreover, much of Technicians' work time goes unreported or is outright eliminated from their compensation.

79.     Defendants systemically pressure Technicians to underreport their hours to give the appearance of greater productivity and as a way to increase their regular hourly rates. This practice results in Plaintiffs and Class Members underreporting several hours of work per day.

80.     When Technicians do not underreport their hours, Defendants threaten to—and in fact do—unilaterally change Technicians' time records. Upon information and belief, Technician supervisors are instructed to reduce Technicians' hours in order to give the appearance of greater productivity. For example, Plaintiff Esquilin often observed that Defendants' system listed fewer

job codes and hours worked than he had inputted. He frequently informed his supervisor of these inaccuracies, but they were not corrected.

81.     The practices of underreporting and altering hours result in Technicians performing substantial off-the-clock work, including overtime work, which goes unrecorded and unpaid by Defendants.

82.     As a natural consequence of Technicians' overwhelming workload and Defendants' constant pressure to complete all daily job assignments, they are systematically denied the opportunity to take meal breaks. Defendants, however, routinely require Technicians to falsely document that they took a thirty-minute meal break, even when they did not do so. These thirty-minute meal periods—meal periods that rarely, in fact, occur—are uncompensated. Technicians are forced to eat while driving between job sites. Specifically, Defendants constantly pressure Technicians to keep working and to move on to the next job. Comcast adds jobs to the Technicians' schedule during their thirty-minute meal period, and the Technician's supervisor or manager demands that the Technician follow Comcast's orders. Therefore, Technicians rarely have time to take a full uninterrupted, off-duty, thirty-minute meal period, even though they are required to report taking one.

83.     If Technicians do not document that they took a thirty-minute meal break, Defendants often alter their time sheets to show a thirty-minute meal break. Defendants' billing departments routinely alter time records to include a thirty-minute meal period if the Technician failed to include one, whether the Technician took a thirty-minute meal period or not. Plaintiffs are informed and believe that this was done pursuant to Defendants' express instructions.

84.     Ultimately, Defendants expect Plaintiffs and Class Members to work constantly throughout the day, including during breaks. Defendants constantly check in with Plaintiffs and

Class Members throughout the day, often calling them numerous times to ensure that they are continuously working.

85.    Technicians also perform substantial off-the-clock work after their shifts end. On an almost-daily basis a Technician's supervisor or manager instructs Technicians to return to work after clocking out, typically to finish a lengthy job or to assist another Technician. Such tasks can take two hours or more to complete. On other occasions, customers call Technicians to return to previously completed assignments and perform additional work. Defendants make no provision for Technicians to clock in or otherwise record this time for compensation, meaning that Technicians typically work four to ten hours (or more) of post-shift work per week on these additional assignments, without compensation.

86.    Additionally, Defendants require Technicians to go to customers' homes on their day off to fix or complete a job. Technicians also frequently receive customer calls for follow-up service on their day off. Moreover, Technicians have no option but to perform oil changes and other work vehicle maintenance on their day off. Defendants make no provision for Technicians to clock in or otherwise record this time for compensation.

Technicians' Compensation Model

87.    Technicians are primarily paid on a piece-rate basis. Defendants' piece-rate compensation system uses: (1) the total dollar value for piece-rate work per job and (2) the number of hours recorded as worked, to calculate each Technician's regular hourly rate of pay for each week. In order to calculate Technicians' regular hourly rates, Defendants add up the total accepted codes, which correlate to a dollar amount, and then divide this amount by the number of accepted hours worked. However, Technicians' completed codes and hours worked are not accurately recorded and are severely underreported. Technicians are pressured by their managers and

supervisors to enter fewer hours worked in order to show higher productivity and to increase their hourly rates. Moreover, Defendants also unilaterally change Technicians' time records to reflect fewer hours worked or lower-paying job codes.

88.     The policies and practices of Defendants have been similar for Plaintiffs and Class Members, regardless of location.

<u>Defendants' Systematic Violations of Federal and State Laws</u>

89.     As a result of the practices described above, Defendants systematically violated, and continue to violate, the FLSA and the wage-and-hour laws of Massachusetts, Maine, New Hampshire, New Jersey, and Pennsylvania.

90.     Defendants' policy and practice of having Technicians work off the clock, their policy of eliminating piece rates and hours worked, and their failure to pay for overtime, all result in violations of Massachusetts, Maine, New Hampshire, New Jersey, and Pennsylvania law.

91.     Defendants' conduct also reduces the total hours factored into Defendants' compensation formula, which necessarily reduces Technicians' total compensation, overtime compensation, as well as the total number of hours compensated at the required, *bona fide* overtime rate. This uniformly violates the FLSA. 29 U.S.C. § 207(a), (g).

92.     In addition, Defendants routinely deny Plaintiffs and Class Members timely and compliant off-duty meal periods. In particular, Defendants routinely require Technicians to work off-the-clock during thirty-minute meal periods while simultaneously deducting thirty minutes from Technicians' pay for meal breaks that are rarely in fact taken.

93.     Throughout the relevant time period, Defendants expected and required Plaintiffs and Class Members to be available to work during their entire shifts, even during purported meal breaks and rest breaks.

94.    Defendants' method of paying Plaintiffs and Class Members was willful and was not based on a good-faith and reasonable belief that their conduct complied with either the FLSA, Massachusetts, Maine, New Hampshire, New Jersey, or Pennsylvania law. To the contrary, Defendants' formulated their method of paying Plaintiffs and Class Members in order to avoid liability under the governing wage-and-hour laws.

95.    Defendants' common course of wage-and-hour misconduct includes routinely failing to maintain true and accurate records of the hours worked by Plaintiffs and Class Members. In particular, Defendants have failed to record hours that Plaintiffs and Class Members worked off-the-clock during meal and rest breaks, as well as off-the-clock work performed before and after their shifts.

96.    To the contrary, Defendants instruct Technicians to falsely clock out for lunch to reflect that they took a meal break, with complete indifference as to whether Technicians in fact were able to, and did, take a meal break. Typically, Technicians were forced to eat while they were driving due to an overwhelmingly packed schedule. If Technicians fail to document that they took a meal break, Defendants alter their time records to reflect a meal period that was never taken.

97.    Beyond Defendants' requiring Technicians to work off-the-clock during meal breaks, Technicians' schedules are too busy, and Defendants' pressure to complete job assignments is too constant, for Technicians to take meal breaks. Defendants monitor Plaintiffs and Class Members throughout the day, including by telephone, directing them to go from customer to customer without breaks. As a result, the time worked during missed meal breaks by Plaintiffs and Class Members goes unrecorded and uncompensated.

98.    Since Technicians are systematically deprived to the wages to which they are due and entitled, Plaintiffs and Class Members do not receive all pay owed to them at the end of their

employment. Compensation for off-the-clock work, missing piece rates, lowered piece rates, and overtime remain outstanding after termination.

99.     Compensation provided to Plaintiffs and Class Members is not paid finally, unconditionally, free and clear of deductions or kickbacks. To the contrary, Defendants require Plaintiffs and Class Members to incur numerous work-related expenses.

100.     Indeed, Technicians purchase tools before and during their employment with Defendants. When each Technician begins employment, both the managers and supervisors inquire about which tools they have in their possession. If a Technician does not possess the necessary tools to complete jobs assigned to them, Defendants require each Technician to purchase the necessary tools from Defendants.

101.     Technicians must purchase their own tools, such as wireless drills, drill bits, pliers, wrenches, screwdrivers, torches, staple guns, meters, crimpers, strippers, boots, and helmets. Defendants also charge Technicians to purchase the clothing necessary for them to comply with Defendants' uniform requirements.

102.     Moreover, Technicians purchase gasoline for their work trucks in order to transit between their assigned jobs, but are not reimbursed for this expense.

103.     In addition, Defendants subtract from Technicians' compensation for lost or damaged equipment, missed timeframes, failed quality control checks, parking tickets, toll expenses, and other costs incurred by Technicians during the performance of their work duties for Defendants.

104.     Despite these requirements, Defendants refuse to compensate Plaintiffs and Class Members for the costs associated with their work-related expenses.

105.     Some of these costs are incurred during weeks in which Plaintiffs and Class

Members worked in excess of forty hours. Since Plaintiffs and Class Members routinely work, or worked, in excess of forty hours in a workweek, and because Defendants do not compensate Plaintiffs and Class Members for these necessarily incurred business expenses—expenses incurred solely for Defendants' benefit—these costs cut into the overtime wages required to be paid to Plaintiffs and Class Members.

106.    Defendants' common course of wage-and-hour misconduct also includes routinely making improper deductions from the wages of Plaintiffs and Class Members. This includes without limitation deductions for loss or damage of tools and equipment that are required or necessary to perform the job and deductions for the purchase of company-mandated uniforms.

107.    Defendants derive a financial profit or benefit from all of these deductions. Defendants had actual or constructive knowledge that these deductions were being taken from the wages of Plaintiffs and Class Members.

108.    Defendants knew or should have known that the work that they required of Plaintiffs and Class Members should have been paid for all time worked under the FLSA and state laws.

109.    Defendants knew or should have known that the deductions were improper under the FLSA and state laws.

110.    Defendants are sophisticated national businesses with access to knowledgeable human resource specialists and competent labor counsel.

111.    Defendants do not maintain accurate records of the actual hours that Plaintiffs and Class Members worked each workday and the total hours worked each workweek as required by the FLSA and state laws.

112.    Defendants have acted willfully and with reckless disregard of clearly applicable

FLSA and state law wage and hour provisions by failing to compensate Plaintiffs and Class Members for all hours worked in excess of forty (40) during the workweeks.

COLLECTIVE ACTION ALLEGATIONS

113.    Plaintiffs pursue their FLSA claims on behalf of the Collectives pursuant to 29 U.S.C. § 216(b).

114.    Plaintiffs, individually and on behalf of the Collectives defined above, seek relief on a collective basis challenging Defendants' policies and practices of failing to accurately record all hours worked, and failing to properly pay Technicians for all hours worked, including overtime compensation. The number and identify of other similarly situated persons yet to opt-in and consent to by party-plaintiffs may be determined from the records of Defendants, and potential opt-ins may be easily and quickly notified of the pendency of this action.

115.    Plaintiffs' claims for violations of the FLSA may be brought and maintained as a collective action pursuant to Section 216(b) of the FLSA, because Plaintiffs' claims are similar to the claims of the members of the proposed Collectives.

116.    The members of the Collectives are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that requires them to perform work off the clock and without compensation in violation of the FLSA.

117.    Plaintiffs are representative of the members of the Collectives and are acting on behalf of their interests, as well as Plaintiffs' own interests, in bringing this action.

118.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Collectives. Plaintiffs have retained counsel competent and experienced in employment and wage-and-hour class action and collective action litigation.

119.    The similarly situated members of the Collectives are known to Defendants, are

readily identifiable, and may be located through Defendants' records. These similarly situated employees may readily be notified of this action, and allowed to opt-in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, and attorney's fees and costs under the FLSA.

CLASS ACTION ALLEGATIONS

120.    Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of themselves and the State Law Classes as defined above.

121.    The members of the State Law Classes are so numerous and dispersed that joinder of all members is impracticable. Upon information and belief, there are more than fifty (50) members in each of the State Law Classes.

122.    Plaintiffs will fairly and adequately represent and protect the interests of the State Law Classes because there is no conflict between the claims of Plaintiffs and those of the State Law Classes, and Plaintiffs' claims are typical of the claims of the State Law Classes. Plaintiffs' undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

123.    There are questions of law and fact common to the proposed State Law Classes, which predominate over any questions affecting only individual Class members, including, without limitation:

   a.    whether Defendants Tri-Wire and Comcast violated and continue to violate federal and state law (including that of Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania) through their policies and practices of not paying their Technicians for all hours worked;

   b.    whether Defendants violated and continue to violate federal and state law

22

(including that of Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania) through their policies and practices of not paying their Technicians for overtime compensation;

c.     whether Defendants violated and continue to violate federal and state law (including that of Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania) through their policies and practices of not paying their Technicians at the applicable minimum wage;

d.     whether Defendants violated and continue to violate state law (including that of Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania) through their policies and practices of requiring Technicians to perform work during or be on-duty during falsely recorded meal and rest periods; and

e.     whether Defendants violated and continue to violate state law (including that of Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania) through their policies and practices of not reimbursing their Technicians for reasonable business expenses.

124.   Plaintiffs' claims are typical of the claims of the State Law Classes in the following ways, without limitation:  (a) Plaintiffs are members of the State Law Classes; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Classes; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the State Law Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the State Law Classes; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the State Law Classes members.

125.    Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the State Law Classes predominate over any questions affecting only individual Class members.

126.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The State Law Classes are readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the State Law Classes would create the risk of inconsistent or varying adjudications with respect to individual State Law Classes members that would establish incompatible standards of conduct for Defendants.

127.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the State Law Classes members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

128.    Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the State Law Classes. Plaintiffs envision no difficulty in the management of this action as a class action.

COUNT I
Violation of the FLSA
(On Behalf of Plaintiffs, the Collective, and the Comcast Collective)

129.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

130.    Plaintiffs, Collective members, and Comcast Collective members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

131.    The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half (1½) times the regular rate of pay for all hours worked in excess of forty (40) hours in a workweek. 29 U.S.C. § 207(a)(1).

132.    At all times material herein, Plaintiffs and the Collectives are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. § 203(e).

133.    Defendants are covered employers required to comply with the FLSA's mandates. 29 U.S.C. § 203(d); 29 C.F.R. § 552.109(a).

134.    Defendants violated the FLSA with respect to Plaintiffs and the Collectives by, among other things, failing to compensate Plaintiffs and the Collectives for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage or overtime premium for such work. 29 U.S.C. § 206; 29 C.F.R. § 531.35; 29 U.S.C. § 207(a), (g).

135.    Defendants also violated the FLSA by failing to create, keep, and preserve records of all hours worked by Plaintiffs and the Collectives sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

136.    Plaintiffs and the Collectives are victims of a uniform and enterprise-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt employees of Defendants, working throughout the United States.

137.    Plaintiffs and the Collectives are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

138.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not in violation of the FLSA and, as a result thereof, Plaintiffs and the Collectives are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay or prejudgment interest at the applicable rate or both. 29 U.S.C. § 216(b).

139.    As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum-wage, straight-time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiffs and the Collectives. Accordingly, Defendants are liable for unpaid wages, together with an equal amount as liquidated damages, as well as attorney's fees and the costs of this action pursuant to 29 U.S.C. § 216(b).

140.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

141.    Wherefore, Plaintiffs and the Collectives request relief as hereinafter provided.

COUNT II
Violation of the Maine Minimum Wage and Overtime Law
(On Behalf of Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass)

142.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

143.    At all times relevant herein, Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass were employees of Defendants within the meaning of the Maine Minimum Wage and Overtime Law, 26 M.R.S.A. § 663(3).

144.    At all times relevant herein, Defendants employed Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass within the meaning of the Maine Minimum Wage and Overtime Law, 26 M.R.S.A. § 663(2).

145.    The Main Minimum Wage and Overtime Law requires that employees be compensated at no less than the Maine minimum wage, which became $12.15 per hour effective January 1, 2021. 26 M.R.S.A. § 664(1).

146.    The Main Minimum Wage and Overtime Law also requires that employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the employee's regular rate of pay. 26 M.R.S.A. § 664(3).

147.    Defendants' conduct, as set forth above, in making numerous deductions from the paychecks of Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass and by obliging these employees to make out-of-pocket purchases of the tools and equipment necessary to perform their jobs caused these employees' wages to decline below the Maine minimum wage. 26 M.R.S.A. § 664(1).

148.    Defendants' conduct, as set forth above, in failing to pay Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass overtime wages which they earned as a result of their employment violates the Maine overtime law, 26 M.R.S.A. § 664(3).

149.    Defendants willfully, knowingly, or recklessly denied compensation to Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass at the lawful minimum wage and for hours worked over forty (40) per week at the rate of one and one-half (1½) times their regular rate of pay.

150.    Pursuant to 26 M.R.S.A. § 670, Defendants are liable to Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass for unpaid minimum and overtime

wages, liquidated damages, attorney's fees, and costs of this action.

COUNT III
Violation of the Maine Employment Practices Act Regarding Unpaid Wages
(On Behalf of Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast
Subclass)

151.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

152.    At all times relevant herein, Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass were employees of Defendants within the meaning of the Maine Employment Practices Act, 26 M.R.S.A. § 629.

153.    At all times relevant herein, Defendants employed Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass within the meaning of the Maine Employment Practices Act, 26 M.R.S.A. § 629.

154.    The time spent on jobs and jobs worked on or completed by Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass are work as defined by 26 M.R.S.A. § 629.

155.    Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass have demanded that they be paid for such time and work completed.

156.    Defendants failed to pay Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass for all hours and time worked as set forth above in violation of 26 M.R.S.A. § 629.

157.    Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass are entitled pursuant to 26 M.R.S.A. § 626 and 626-A to recover their unpaid wages and an amount equal to twice the amount of their unpaid wages, a reasonable rate of interest, attorney's fees, and costs of this action.

## COUNT IV
### Violation of the Maine Employment Practices Act Regarding Deductions
(On Behalf of Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass)

158.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

159.    The Maine Employment Practices Act, 26 M.R.S.A. § 629, prohibits agreements that "require or permit any person as a condition of securing or retaining employment to work without monetary compensation or when having an agreement, oral, written or implied, that a part of such compensation should be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person . . . For purposes of this subchapter, 'debt' means a benefit to the employee. 'Debt' does not include . . . damages to the employer's property in any form . . . uniforms, personal protective equipment or other tools of the trade that are considered to be primarily for the benefit or convenience of the employer."

160.    Defendants deducted money each week from the paychecks of Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass members as part of Defendants' payment program, which Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass were forced to enter.

161.    These deductions violated 26 M.R.S.A. § 629.

162.    Defendants are liable to Plaintiffs Charcalis and Couturier, the Maine Class, and the Maine Comcast Subclass for any and all deductions withheld as part of the payment program.

## COUNT V
### Violation of the Massachusetts Wage Act Regarding Overtime
(On Behalf of Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass)

163.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

164.    The Massachusetts Minimum Fair Wage Law requires that employees be compensated for all hours worked in excess of forty hours per week at a rate not less than one and

one-half times the employee's regular rate of pay. Mass. Gen. L. c. 151 § 1A.

165.    Defendants' conduct, as set forth above, in failing to pay Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass overtime wages which they earned as a result of their employment violates the Massachusetts Minimum Fair Wage Law, Mass. Gen. L. C. 151 § 1A. This claim is brought pursuant to Mass. Gen. L. C. 151 § 1B.

166.    Consistent with Mass. Gen. L. c. 149 § 150, Plaintiffs filed wage claims with the office of the Massachusetts Attorney General. The Massachusetts Attorney General issued right-to-sue letters to Plaintiffs Rodriguez, Charcalis, and Couturier on April 12, 2021, and to Plaintiff Esquilin on April 23, 2021.

167.    As a result of Defendants' violation of the Massachusetts Minimum Fair Wage Law, Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass have incurred harm and loss in an amount to be determined at trial, along with mandatory treble damages, attorney's fees, and costs of litigation. Mass. Gen. L. c. 149 § 150.

COUNT VI
Violation of the Massachusetts Wage Act Regarding Timely Wage Payment
(On Behalf of Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass)

168.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

169.    As set forth above, Defendants violated the Massachusetts Minimum Fair Wage Law by failing to timely pay Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass all wages due to them as such wages became due and payable.

170.    Defendants' failure to pay overtime wages as required by Mass. Gen. L. c. 151 § 1A caused Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass to be deprived of the full amount of their earned wages when such wages became due and payable, including upon their termination.

171.    Defendants' failures to timely pay due and payable wages were repeated, knowing, and willful.

172.    Likewise, Defendants' conduct, as set forth above, in requiring Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass to incur numerous work-related business expenses that properly should have been borne by Defendants, violates Mass. Gen. L. c. 149 § 148. This includes, without limitation, unlawful deduction from wages incurred for tools, supplies, gasoline, and uniforms, purchased both before and during employment. This claim is brought pursuant to Mass. Gen. L. c. 149 § 150.

173.    As a result of Defendants' violation of the Massachusetts Minimum Fair Wage Law, Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass have incurred harm and loss in an amount to be determined at trial, along with mandatory treble damages, attorney's fees, and costs of litigation. Mass. Gen. L. c. 149 § 150.

COUNT VII
Violation of the Massachusetts Wage Act Regarding Minimum Wage
(On Behalf of Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass)

174.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

175.    The Massachusetts Minimum Fair Wage Law requires that employees be compensated for all hours worked at the full Massachusetts minimum wage, which became $13.50 per hour effective January 1, 2021. Mass. Gen. L. c. 151 § 1.

176.    Defendants' conduct, as set forth above, in failing to pay Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass the minimum wage which they earned as a result of their employment, violates the Massachusetts Minimum Fair Wage Law, Mass. Gen. L. c. 151 §§ 1, 7. In requiring Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass to purchase to incur numerous work-related expenses that

properly should have been born by Defendants, Defendants have caused these employees' rate of pay to fall below the lawful minimum wage in violation of the Massachusetts Minimum Fair Wage Law. This claim is brought pursuant to Mass. Gen. L. c. 151 § 20.

177.    As a result of Defendants' violation of the Massachusetts Minimum Fair Wage Law, Plaintiffs, the Massachusetts Class, and the Massachusetts Comcast Subclass have incurred harm and loss in an amount to be determined at trial, along with mandatory treble damages, attorney's fees, and costs of litigation. Mass. Gen. L. c. 149 § 150.

COUNT VIII
Violation of the New Hampshire Minimum Wage Law
(On Behalf of Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the
New Hampshire Comcast Subclass)

178.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

179.    At all times relevant herein, Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the New Hampshire Comcast Subclass are covered employees entitled to the protections provided under the New Hampshire Minimum Wage Law. N.H. Rev. Stat. § 279:1(X).

180.    Defendants are covered employers under the New Hampshire Minimum Wage Law. N.H. Rev. Stat. § 279:1(XI).

181.    The New Hampshire Minimum Wage Law requires that covered employees be compensated at no less than the federal minimum wage of $7.25 per hour. N.H. Rev. Stat. § 279:21.

182.    The New Hampshire Minimum Wage Law also requires that covered employees be paid at the rate of time and one-half (1½) for all time worked in excess of forty (40) hours in a workweek. N.H. Rev. Stat. § 279:21.

183.    Defendants' conduct, as set forth above, in making numerous deductions from the paychecks of Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the

New Hampshire Comcast Subclass and by obliging these employees to make out-of-pocket purchases of the tools and equipment necessary to perform their jobs caused these employees' wages to decline below the New Hampshire minimum wage. N.H. Rev. Stat. § 279:21

184.    Defendants failed to compensate Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the New Hampshire Comcast Subclass at a rate of one and one-half (1½) times their regular rate of pay for hours worked in excess of forty (40) hours per workweek, in violation of N.H. Rev. Stat. § 279:21.

185.    Pursuant to N.H. Rev. Stat. § 275:29, Defendants are liable to Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the New Hampshire Comcast Subclass for unpaid minimum and overtime wages, liquidated damages, attorney's fees, and costs of this action.

COUNT IX
Violation of the New Hampshire Withholding of Wages Law
(On Behalf of Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the New Hampshire Comcast Subclass)

186.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

187.    As set forth above, Defendants routinely withheld portions of the wages of Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the New Hampshire Comcast Subclass as part of Defendants' payment program.

188.    These deductions violate N.H. Rev. Stat. § 275:48 because the deductions were not for the benefit of Defendants' employees, nor were they voluntary.

189.    Plaintiffs Rodriguez, Charcalis, and Couturier, the New Hampshire Class, and the New Hampshire Comcast Subclass are entitled to recover their unpaid wages, including liquidated damages, attorney's fees, and costs of this action pursuant to N.H. Rev. Stat. § 275:53.

COUNT X
Breach of Contract
(On Behalf of Plaintiffs Couturier and Charcalis and the New Hampshire Contract Subclass)

190.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

191.     When Plaintiff Couturier was considering employment with Tri-Wire, Tri-Wire promised him a $1,500 sign-on bonus should he join the company. Plaintiff Couturier accepted this offer and came to work for Tri-Wire as a Technician.

192.     Plaintiff Couturier performed all the conditions necessary to receive the sign-on bonus promised by Tri-Wire.

193.     Nonetheless, Tri-Wire breached its agreement with Plaintiff Couturier by failing to pay him the promised sign-on bonus.

194.     Likewise, when Plaintiff Charcalis was considering employment with Tri-Wire, Tri-Wire promised him a $1,500 sign-on bonus should he join the company. Plaintiff Charcalis accepted this offer and came to work for Tri-Wire as a Technician.

195.     Plaintiff Charcalis performed all the conditions necessary to receive the sign-on bonus promised by Tri-Wire.

196.     Nonetheless, Tri-Wire breached its agreement with Plaintiff Charcalis by failing to pay him the promised sign-on bonus.

197.     Plaintiff Couturier and Charcalis's experiences are part of a uniform practice whereby Tri-Wire incentivized New Hampshire Contract Subclass members to become employed as Technicians by offering them sign-on bonuses, but then failed to pay the promised bonuses.

198.     Plaintiffs Couturier and Charcalis and the members of the New Hampshire Contract Subclass have been damaged by Tri-Wire's actions and are entitled to recover the full amount of their promised sign-on bonuses plus a reasonable rate of interest under New Hampshire contract law.

COUNT XI
Violation of the New Jersey Wage and Hour Law
(On Behalf of Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass)

199.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

200.    The New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a to -56a38, requires that employees be compensated for all hours worked at the New Jersey minimum wage, which became $12.00 per hour effective January 1, 2021. N.J.S.A. 34:11-56a4(a).

201.    The NJWHL also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at which he or she is employed. N.J.S.A. 34:11-56a4(b)(1).

202.    The NJWHL also requires that every employer keep "true and accurate" records of all hours worked by and wages paid to each of its employees. N.J.S.A. 34:11-56a20.

203.    At all times material herein, Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass are covered employees entitled to the protections of the NJWHL.

204.    Defendants are covered employers required to comply with the NJWHL's mandates.

205.    Defendants' conduct, as set forth above, in making numerous deductions from the paychecks of Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass and by obliging these employees to make out-of-pocket purchases of the tools and equipment necessary to perform their jobs caused these employees' wages to decline below the New Jersey minimum wage. N.J.S.A. 34:11-56a4(a).

206.    As set forth above, Defendants violated the NJWHL with respect to Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass by, among other things, failing to compensate them for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage or overtime premium for such work. Defendants also violate the

NJWHL by failing to keep true and accurate records of all hours worked by Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass.

207.    As a result of these violations of the NJWHL, Defendants are liable for treble damages, attorney's fees, and costs of this action. N.J.S.A. 34:11-56a25.

COUNT XII
Violation of the New Jersey Wage Payment Law
(On Behalf of Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass)

208.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

209.    The New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1 to -4.14, requires every employer to pay its employees "the full amount of wages due . . . at least twice during each calendar month, on regular paydays designated in advance by the employer[.]" N.J.S.A. 34:11-4.2. Each payday must occur not more than ten working days after the pay period ends. *Id.*

210.    The NJWPL further requires that a discharged or suspended employee be paid all wages due "not later than the regular payday for the pay period during which the employee's termination, suspension or cessation of employment . . . took place[.]"  N.J.S.A. 34:11-4.3.

211.    At all times material herein, Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass are covered employees entitled to the protections of the NJWPL.

212.    Defendants are covered employers required to comply with the NJWPL's mandates.

213.    Defendants violated the NJWPL with respect to Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass by, among other things, failing to compensate them for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium due on regular paydays designated in advance.

214.    By failing to notify Plaintiff Esquilin, the New Jersey Class, and the New Jersey

Comcast Subclass about the time and place for payment of their overtime hours, Defendants violated the NJWPL and caused economic harm to Plaintiff Esquilin and the members of the New Jersey Class.

215.    Defendants also violated the NJWPL by failing to notify Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass that Defendants did not intend to pay them at an overtime rate for working their scheduled overtime hours.

216.    As a result of these violations, Plaintiff Esquilin, the New Jersey Class, and the New Jersey Comcast Subclass are entitled to recover treble damages, attorney's fees, and costs of this action. N.J.S.A. 34:11-4.10(c).

COUNT XIII
Breach of Contract
(On Behalf of Plaintiff Esquilin and the New Jersey Contract Subclass)

217.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

218.    When Plaintiff Esquilin was considering rejoining Tri-Wire in June 2019, Tri-Wire promised him a $1,500 sign-on bonus should he do so. Plaintiff Esquilin accepted this offer and came to work for Tri-Wire as a Technician.

219.    Plaintiff Esquilin performed all the conditions necessary to receive the sign-on bonus promised by Tri-Wire.

220.    Nonetheless, Tri-Wire breached its agreement with Plaintiff Esquilin by failing to pay him the promised sign-on bonus.

221.    Plaintiff Esquilin's experience is part of a uniform practice whereby Tri-Wire incentivized New Jersey Contract Subclass members to become employed as Technicians by offering them sign-on bonuses, but then failed to pay the promised bonuses.

222.    Plaintiff Esquilin and the members of the New Jersey Contract Subclass have been

damaged by Tri-Wire's actions and are entitled to recover the full amount of their promised sign-on bonuses plus a reasonable rate of interest under New Jersey contract law.

COUNT XIV
Violation of the Pennsylvania Minimum Wage Act
(On Behalf of Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass)

223.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

224.   The Pennsylvania Minimum Wage Act ("PMWA") requires that covered employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 Pa. Code § 231.21(b).

225.   The PMWA also requires that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece-rate basis or any other basis, at the rate of seven dollars and fifteen cents ($7.15) per hour commencing July 24, 2009. 43 Pa. Stat. §§ 333.103, 333.104, and 333.113.

226.   An employee who receives less than this minimum wage is entitled to recover "the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court[.]" 43 Pa. Stat. § 333.113.

227.   The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at which he or she is employed. *See* 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41

228.   At all times material herein, Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass are covered employees entitled to the protections of the PMWA. 43 Pa. Stat. § 333.103(h). Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania

Comcast Subclass are not exempt from the PMWA.

229.    Defendants are covered employers required to comply with the PMWA's mandates. 43 Pa. Stat. § 333.103(g).

230.    The PMWA defines "wages" as "compensation due to any employee by reason of his or her employment."  43 Pa. Stat. § 333.103(d).

231.    Under the PMWA, overtime is calculated based on the number of hours worked in a "workweek," which the Pennsylvania Department of Labor has defined as "a period of 7 consecutive days."  34 Pa. Code. § 231.42.

232.    Defendants violated the PMWA with respect to Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass by, among other things, failing to compensate them for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage or overtime premium for such work. Defendants also violate the PMWA by failing to keep true and accurate records of all hours worked by Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass. 43 Pa. Stat. § 333.108.

233.    Defendants maintain policies and procedures that force Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass to work off the clock, without compensation. Due to the grinding work schedules and the systematic denial of piece rates and compensation for their on-duty time, Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass are routinely compensated at a rate that is less than the statutory minimum wage. 34 Pa. Code. § 231.42.

234.    Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass regularly work well in excess of forty hours per workweek.

235.    Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass

also pay expenses necessary to their employment with Defendants but are not reimbursed for these expenditures.

236.    The combination of long work schedules and unreimbursed expenses regularly result in payment at rates below the statutory minimum wage.

237.    By failing to maintain adequate time records as required by the PMWA, 43 Pa. Stat. § 333.108, Defendants make it difficult to calculate the minimum-wage compensation due to Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass.

238.    Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the PMWA.

239.    As a result of these violations of the PMWA, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass. Accordingly, Defendants are liable for unpaid wages, attorney's fees, and costs of this action.

COUNT XV
Violation of the Pennsylvania Wage Payment Collection Law
(On Behalf of Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast
Subclass)

240.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

241.    At all times material herein, Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass are covered employees entitled to the protections of the Pennsylvania Wage Payment Collection Law ("PWPCL"). 43 Pa. Stat. § 260.9a(a).

242.    Defendants are covered employers required to comply with the PWPCL's

mandates. 43 Pa. Stat. § 260.1.

243.     The PWPCL defines "wages" as "[i]ncluding all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation." 43 Pa. Stat. § 260.1.

244.     The PWPCL, 43 Pa. Stat. § 260.5(a), provides that:

> Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable. If requested by the employee, such payment shall be made by certified mail.

245.     Pursuant to the PWPCL, Defendants are obligated to pay employees all wages and overtime within fifteen days of the end of the pay period. 43 Pa. Stat. § 260.3.

246.     The PWPCL, 43 Pa. Stat. § 260.10, provides that:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employee shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

247.     The PWPCL imposed a duty on employers to notify their employees of the time and place of payment and the rate of pay to be paid. 43 Pa. Stat. § 260.4.

248.     The PWPCL also provides that "[n]o provision of this act shall in any way be contravened or set aside by private agreement."  43 Pa. Stat. § 260.7.

249.    The PWPCL, 43 Pa. Stat. 260.9a(a), provides that:

> Actions by an employee, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action or on behalf of all employees similarly situated. Any such employee, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

250.    Defendants violated the PWPCL with respect to Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass by, among other things, failing to compensate them for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium due on regular paydays designated in advance.

251.    Defendants further violated the PWPCL by failing to keep true and accurate records of all hours worked by Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass.

252.    By failing to notify Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass about the time and place for payment of their overtime hours, Defendants violated the PWPCL and caused economic harm to Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass. 43 Pa. Stat. § 260.4.

253.    Defendants violated the PWPCL by failing to notify Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass that Defendants did not intend to pay them at an overtime rate for working their scheduled overtime hours. 43 Pa. Stat. § 260.4.

254.    As a result of the aforesaid violations of the PWPCL, Plaintiff Esquilin, the Pennsylvania Class, and the Pennsylvania Comcast Subclass are entitled to recover all unpaid

overtime wages, mandatory attorney's fees and costs of suit, liquidated damages of twenty-five percent (25%), and prejudgment interest. 43 Pa. Stat. §§ 260.9a(a), 260.10.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

    a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of the Collective and the Comcast Collective;

    b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Collective and Comcast Collective members;

    c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Maine Class, the Maine Comcast Subclass, the Massachusetts Class, the Massachusetts Comcast Subclass, the New Hampshire Class, the New Hampshire Comcast Subclass, the New Hampshire Contract Subclass, the New Jersey Class, the New Jersey Comcast Subclass, the New Jersey Contract Subclass, the Pennsylvania Class, and the Pennsylvania Comcast Subclass;

    d. Damages (including all unpaid overtime compensation and all unpaid wages) and pre-judgment and post-judgment interest to the fullest extent permitted under the law;

    e. All compensatory damages due under the FLSA, Pennsylvania, or Massachusetts law, including lost wages, earnings, and other employee benefits, restitution, and all other sums of money owed to Plaintiffs, and Class Members, together with interest on these amounts;

    f. Liquidated damages and penalties to the fullest extent permitted under the law;

    g. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

    h. Such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiffs hereby demand a jury trial on all claims and issues.

Dated: May 7, 2021                              Respectfully submitted,

                                               */s/ Jason M. Leviton*
                                               Jason M. Leviton (BBO# 678331)
                                               Nate Silver (BBO# 693968)
                                               BLOCK & LEVITON LLP
                                               260 Franklin Street, Suite 1860
                                               Boston, Massachusetts 02110
                                               Tel.: (617) 398-5600
                                               Fax: (617) 507-6020
                                               jason@blockleviton.com
                                               nate@blockleviton.com

                                               Shanon J. Carson (*pro hac vice* forthcoming)
                                               Camille Fundora Rodriguez (*pro hac vice*
                                               forthcoming)
                                               Stacy Savett (*pro hac vice* forthcoming)
                                               Daniel F. Thornton (*pro hac vice* forthcoming)
                                               BERGER MONTAGUE PC
                                               1818 Market Street, Suite 3600
                                               Philadelphia, PA 19103
                                               Tel.: (215) 875-3000
                                               Fax: (215) 875-4604
                                               scarson@bm.net
                                               crodriguez@bm.net
                                               stasavett@bm.net
                                               dthornton@bm.net

                                               Carolyn H. Cottrell (*pro hac vice* forthcoming)
                                               Michelle S. Lim (*pro hac vice* forthcoming)
                                               Ori Edelstein (*pro hac vice* forthcoming)
                                               SCHNEIDER WALLACE COTTRELL
                                               KONECKY LLP
                                               2000 Powell Street, Suite 1400
                                               Emeryville, CA 94608
                                               Tel.: (415) 421-7100
                                               Fax: (415) 421-7105
                                               ccottrell@schneiderwallace.com
                                               mlim@schneiderwallace.com
                                               oedelstein@schneiderwallace.com

                                               *Attorneys for Plaintiffs and the Proposed Classes*