**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBENSON JEAN-PIERRE, JEAN METELUS, BILL MCKEE and MICHAEL GARY FAUNTLEROY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>J&L CABLE TV SERVICES, INC.,<br><br>Defendant. | Docket No. 1:18-cv-11499-MLW |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. OVERVIEW OF CLASS COUNSEL'S WORK ON THE ACTION .......... 3

A. Case Initiation .......... 3

B. Class Counsel Obtained Conditional Certification of the Putative Collective, and the Court Denied Comcast's Motions to Dismiss and for Protective Order .......... 3

C. Class Counsel Conducted and Responded to Exhaustive Discovery .......... 5

D. Class Counsel Negotiated the Settlement at Arm's-Length Over Months .......... 6

E. Preliminary Approval .......... 7

III. ARGUMENT .......... 9

A. District Courts in the First Circuit Routinely Approve One-Third Fee Awards .......... 9

B. The Result Achieved, and the Effort, Skill, and Risk Involved, Favor a One-Third Fee Award .......... 10

1. The significant settlement fund benefits hundreds of workers. .......... 11

2. No Class Members have objected. .......... 12

3. The action was prosecuted by skilled, experienced, efficient counsel. .......... 12

4. The action is complex and extended through several years of litigation, with significant risk of non-payment. .......... 13

5. Class Counsel have devoted thousands of hours to this case. .......... 13

6. Courts routinely award one-third fee awards in wage and hour class action settlements. .......... 14

7. Public policy supports the requested fee award. .......... 15

C. A Lodestar Cross-Check Confirms that a One-Third Fee Is Reasonable .......... 16

IV. CLASS COUNSEL'S COSTS SHOULD BE APPROVED .......... 17

V. THE SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED .......... 18

VI. CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
No. 11-cv-10230-MLW, 2020 U.S. Dist. LEXIS 33552
(D. Mass. Feb. 27, 2020) .......... 10, 11, 16

*Bacchi v. Mass. Mut. Life Ins. Co*.,
No. 12-cv-11280-DJC, 2017 U.S. Dist. LEXIS 184926
(D. Mass. Nov. 8, 2017).......... 10, 17, 18

*Baptista v. Mut. of Omaha Ins. Co.*,
859 F. Supp. 2d 236 (D.R.I. 2012) .......... 18

*Bennett v. Roark Capital Grp., Inc*.,
No. 2:09-cv-00421-GZS, 2011 U.S. Dist. LEXIS 48094
(D. Me. May 4, 2011) .......... 14

*Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-cv-12548-NMG, 2020 U.S. Dist. LEXIS
106469 (D. Mass. June 17, 2020) .......... 10

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .......... 9

*Curtis v. Scholarship Storage Inc*.,
No. 2:14-cv-303-NT, 2016 U.S. Dist. LEXIS 70410
(D. Me. May 31, 2016) .......... 10, 14

*Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.),*
58 F. Supp. 3d 167 (D. Mass. 2014) .......... 11

*Heien v. Archstone*, 837 F.3d 97 (1st Cir. 2016) .......... 9

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......... 9

*In re Loestrin 24 Fe Antitrust Litig*.,
No. MDL No. 2472, 2020 U.S. Dist. LEXIS 125746
(D.R.I. July 17, 2020) .......... 14

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*.,
56 F.3d 295 (1st Cir. 1995) .......... 9

*Kondash v. Citizens Bank*,
No. 18-cv-00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588
(D.R.I. Dec. 23, 2020) .............................................................................................. 14

*O'Connor v. Oakhurst Dairy*,
No. 2:14-00192-NT, 2018 U.S. Dist. LEXIS 102244 (D. Me. June 19, 2018) ............. 9, 14, 17

*Palmigiano v. Garrahy*,
707 F.2d 636 (1st Cir. 1983) ........................................................................................ 17

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) ..................................................................................................... 15

*Roberts v. TJX Cos.*,
No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987
(D. Mass. Sep. 30, 2016) ...................................................................................... 10, 11, 14

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05-cv-0484 DLB, 2007 U.S. Dist. LEXIS 86270
(E.D. Cal. Nov. 13, 2007) ............................................................................................ 14

*Scovil v. FedEx Ground Package Sys.*,
No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361
(D. Me. Mar. 14, 2014) ........................................................................................... 14, 18

*Sewell v. Bovis Lend Lease LMB, Inc.*,
2012 U.S. Dist. LEXIS 53556
(S.D.N.Y. Apr. 16, 2012) ............................................................................................. 20

*Soto, et al. v. O.C. Commc'ns., Inc., et al.*,
Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) ......................................... 15

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) .......................................................................................... 9

*Veilleux v. Maine*,
No. 1:16-cv-571-LEW, 2020 U.S. Dist. LEXIS 210895
(D. Me. Nov. 9, 2020) ................................................................................................. 17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 16

*Zamora v. Lyft, Inc.*,
No. 3:16-cv-02558-VC, 2018 U.S. Dist. LEXIS 166618
(N.D. Cal. Sep. 26, 2018) .......... 17

**STATUTES**

11 U.S.C. § 362(a)(1) .......... 4

29 U.S.C. § 216(b) .......... 3, 17

Mass. Ann. Laws ch. 149, § 150 .......... 17

Rule 23 .......... 1, 17

**OTHER AUTHORITIES**

*Newberg on Class Actions* § 14.6 (4th ed. 2007) .......... 14

## I. INTRODUCTION

Plaintiffs Javier Rodriguez, Jorge Esquilin, Harry Charcalis, and Darren Couturier (collectively, "Plaintiffs"), and their attorneys, Berger Montague PC ("BMPC") and Schneider Wallace Cottrell Konecky LLP ("SWCK") (together, "Class Counsel"), respectfully submit this application for an award of attorneys' fees and costs to compensate them for their extensive work over the past three years in achieving an excellent $1,995,000 collective and class action settlement on behalf of current and former cable technicians ("Technicians") employed by Tri-Wire Engineering Solutions, Inc. ("Tri-Wire") who provided services for Tri-Wire to the customers of Comcast Cable Communications Management, LLC ("Comcast"). The $665,000 fee that Class Counsel request – one third of the $1,995,000 Gross Settlement Amount – represents *less* than Class Counsel's current aggregate lodestar.

On April 19, 2023 and September 19, 2023, the Court granted preliminary approval and subsequent modification, respectively, of the Settlement[1] of this wage and hour, hybrid collective and class action under the Fair Labor Standards Act ("FLSA") and Rule 23 of the Fed. R. Civ. P. *See* Dkt. 112, 114, 123 ("Preliminary Approval Order"). The Settlement provides excellent monetary payments for the Collective Members and Settlement Class Members.[2] The overall average *net* recovery currently stands at approximately $2,010.02 for each Technician.[3] This exceptional result only came after multiple years of hard-fought litigation, including considerable

[1] The "Settlement" was previously filed as: Class Action Settlement Agreement and Release, dated March 9, 2023, and Amendment to Class Action Settlement Agreement and Release ("Amendment"), dated August 22, 2023, are jointly referred to as the "Settlement." Dkt. 107-1, 115-1.

[2] Plaintiffs, Collective Members, and Class Members are referred to hereafter as "Technicians" for ease of reading.

[3] This overall figure divides the Net Settlement Amount by the number of Collective Members and Settlement Class Members, and thereby does not factor in the amount of workweeks for each Technician.

motion practice, conditional certification of the Collective, extensive document and written discovery, and intensive mediation and arms' length negotiations with the assistance of a respected wage and hour mediator.

Class Counsel achieved this Settlement through effort and skill in the face of substantial risk. The risk that class certification would not be granted, or that a decertification motion would be granted, was considerable. The Technicians are dispersed in the field, working at different locations across the eastern United States. Establishing that such workers are similarly situated with respect to off-the-clock claims would have imposed significant hurdles. Though Plaintiffs and Class Counsel are confident that they would have obtained certification and defeated any decertification motions, they faced further risk in prosecuting the claims on the merits, and potentially receiving no recovery if this case proceeded to trial in light of the Tri-Wire's bankruptcy. The requested fee award is warranted by Class Counsel's persistence and skill in obtaining an excellent settlement in the face of these considerable risks.

A one-third fee award is within the typical range of attorneys' fees awarded in this Circuit. Class Counsel's aggregate lodestar, representing a negative multiplier of the requested fee, further underscores that Class Counsel seek reasonable compensation for the exceptional Settlement that they have achieved. Plaintiffs additionally seek reimbursement of $75,000 in costs, which the Court should approve as reasonable and necessary to reach this result for the Collective Members and Settlement Class Members.

For these reasons, and as set forth hereinafter, Plaintiffs respectfully request that the Court grant the requested approvals.

## II. OVERVIEW OF CLASS COUNSEL'S WORK ON THE ACTION

In over two years of litigation, Class Counsel has devoted over 2,253.7 hours to the prosecution of the action, with a total aggregate lodestar amount of over $1,384,477.45.[4] *See* Declaration of Ori Edelstein ("Edelstein Decl."), ¶¶ 48, 52, Ex. 1; Declaration of Lane L. Vines ("Vines Decl."), ¶¶ 7, 9. Class Counsel vigorously litigated the action while also demonstrating willingness to participate in good-faith attempts to settle the action. Class Counsel's efforts culminated in the Settlement, which provides significant monetary benefits for the Technicians.

### A. Case Initiation

Class Counsel completed an initial investigation of the factual background and claims prior to the filing of initial pleadings. Edelstein Decl., ¶ 4. This included extensive communications with both Plaintiffs Rodriguez, Esquilin, Charcalis, and Couturier, review and analysis of prior litigation, and an analysis of Defendants, its operations, and business model. *Id*. On May 7, 2021, Class Counsel drafted and filed the initial Collective and Class Action Complaint which asserted wage and hour claims under the FLSA on behalf a proposed collective and under Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania state laws on behalf of a proposed Rule 23 classes in those states. Edelstein Decl., ¶ 5; Dkt. 1.

### B. Class Counsel Obtained Conditional Certification of the Putative Collective, and the Court Denied Comcast's Motions to Dismiss and for Protective Order

Plaintiffs brought their Motion for Conditional Certification and to Facilitate Notice under 29 U.S.C. § 216(b) on September 10, 2021, seeking conditional certification for the proposed

---

[4] These figures represent aggregate amounts, comprised of over 1,602.30 hours for a lodestar amount of $939,097.95 for BMPC, over 651.4 hours for a lodestar amount of $445,379.50 for SWCK. This figure does not include the hours or lodestar expended by local counsel, Block & Levington LLP.

FLSA Collective and to effectuate notice to the Technicians about the action and their ability to opt in. Dkts. 24-25. The motion was supported by eight declarations, including those of Plaintiffs and other opt-in plaintiffs. *See* Dkts. 25-2 to 25-11. The motion provided extensive analysis of the work and job functions of Technicians and the complex compensation system utilized by Defendant to determine their pay. *See* Dkt. 25, at 9-21.

Soon thereafter on September 14, 2021, Tri-Wire filed a notice of bankruptcy, which automatically stayed this litigation as to Tri-Wire alone. Dkt. 30; 11 U.S.C. § 362(a)(1). Further complicating this litigation, on October 11, 2021, Plaintiffs were informed that a substantial portion of Tri-Wire's employee-related documents and data no longer exists due to a ransomware attack. Dkt. 58-1, ¶ 3. Plaintiffs thus served a subpoena *duces tecum* on Automatic Data Processing Inc. ("ADP"), requesting Tri-Wire's employee tax and payroll documents, payroll policies, and communications with ADP regarding payroll. *Id.*, ¶ 4.

On October 27, 2021, Comcast filed an opposition to the motion for conditional certification solely on jurisdictional grounds, as well as a motion to dismiss or, in the alternative, a motion to strike for lack of personal jurisdiction. Dkts. 44-46. Plaintiffs replied to Comcast's opposition on November 10, 2021, to which Comcast filed a sur-reply on November 24, 2021. Dkts. 48, 56.

On November 15, 2021, Comcast further filed a motion for protective order regarding Plaintiffs' subpoena to ADP. Dkt. 50. On January 25, 2022, following full briefing, the Court denied Comcast's motion to dismiss and motion for protective order. Dkt. 66. That same day, and following Plaintiffs' notice of supplemental authority, the Court further granted Plaintiffs' motion for conditional certification. *See id.*; Dkt. 64, 73.

Class Counsel then conferred with Defendant's Counsel regarding the form and method of FLSA notice to the Technicians, pursuant to the Court's directions. *See* Dkts. 66, 69-71; Edelstein Decl., ¶ 6. The Parties agreed on a robust notice protocol that provided for dissemination of notice via U.S. Mail, email, and text message, following the production of a putative Collective list facilitated through Comcast, including its review of Integrated Tech Group's files (the entity that purchased Tri-Wire), and ADP. *See id*. The Court approved the notice protocol and forms of notice on February 8, 2022, but requested further briefing regarding the Parties' respective positions on Class Counsel's ability to contact putative Collective members, which the Parties completed. *See* Dkt. 73-75. The Court ultimately denied Comcast's request to prohibit Class Counsel from contacting putative Collective members. Dkt. 81.

The Collective notice process then proceeded in earnest. On February 24, 2022, ADP released the payroll records of all class and collective members in response to Plaintiffs' subpoena. Edelstein Decl., ¶ 7. Class Counsel worked with the FLSA notice administrator, Simpluris, and Comcast's Counsel to complete the dissemination of the notice. *Id.* To date, a total of 250 individuals filed opt-in consent forms to join the FLSA portion of this Action, and Class Counsel duly filed these opt-in forms with the Court. *See, e.g.*, Dkt. 110.

**C. Class Counsel Conducted and Responded to Exhaustive Discovery**

On February 25, 2022, Plaintiffs propounded 20 interrogatories and 52 requests for production of documents on both Comcast entities, to which Comcast responded on April 11, 2022. Edelstein Decl., ¶ 8. The Parties met and conferred regarding Comcast's responses over the next few months, which was stayed during the Parties' mediation efforts and moot following the Parties' agreement to settle this matter. *Id.*

Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Tri-Wire

and Comcast in this Action, conducted approximately 100 interviews with Plaintiffs and the Opt-In Plaintiffs, and obtained and reviewed documents that Comcast and ADP had produced during the course of discovery. *Id.,* ¶ 9. This included documentation relating to Comcast's contractual relationship with Tri-Wire and Tri-Wire's compensation policies and practices, payroll data for the Settlement Class, and a 20% sampling of data relating to the Technicians' work for Tri-Wire on Comcast customers' accounts. *Id.*

On February 11, 2022, Comcast also propounded 19 interrogatories as well as 59 requests for production of documents on each named Plaintiff. *Id.*, ¶ 10. Class Counsel worked closely with all four named Plaintiffs to prepare responses and compile relevant documents, and served formal responses on March 25, 2022. *Id.* Following the Parties' meet and confer efforts, Class Counsel worked with Plaintiffs to further supplement their written discovery responses on November 16, 2022. *Id.* Plaintiffs ultimately produced hundreds of responsive documents to Comcast. *Id.*

### D. Class Counsel Negotiated the Settlement at Arm's-Length Over Months

Following significant discovery, the Parties began discussions regarding potential mediation of the action, as well as regarding the scope of discovery necessary for a productive mediation session. *See id.*, ¶¶ 12, 14. On November 30, 2022, the Parties conducted a hybrid in-person and remote, full-day mediation before Magistrate Judge Diane Welsh (Ret.), JAMS-Phila., that lasted into the evening. *Id.,* ¶ 12. The Parties reached a settlement in principle that evening to resolve all claims in this litigation. *Id.*, ¶ 13.

Class Counsel analyzed and evaluated the merits of the claims made against Comcast in this action, conducted interviews with Plaintiffs and the Opt-In Plaintiffs, reviewed documents that Comcast and ADP had produced during the course of discovery relating to Defendants' compensation policies and practices, and analyzed payroll data. *Id.*, ¶¶ 14-15. Prior to the

mediation, Class Counsel had prepared a detailed mediation statement, and performed calculations of potential damages based on their investigations and the extensive payroll and timekeeping data produced by ADP and Comcast. *Id.*, ¶ 14.

The Parties executed a memorandum of understanding on December 28, 2022, and extensively met and conferred to memorialize the terms of the long-form settlement agreement over the next few months. *Id.*, ¶ 13. The Parties eventually reached an accord with Judge Welsh's assistance, which resulted in the Parties' execution of the long-form settlement agreement, following numerous drafts, on March 9, 2023. *Id.*; Settlement. The Settlement Agreement is detailed and complex, as it resolves a hybrid FLSA collective and Rule 23 action with five state law classes and workweek weightings to account for differences in state laws. Edelstein Decl., ¶ 16. Class Counsel spent significant time communicating with the potential settlement administrators to obtain accurate administration estimates. *See id.* The drafting process involved several rounds of edits and a separate drafting process for the settlement notice. *Id.*

### E. Preliminary Approval

Class Counsel then drafted the preliminary approval motion and supporting papers, filed with the Court on March 17, 2023. *See* Dkts. 105-107. During the preliminary approval hearing on March 30, 2023, the Court directed the Parties to file supplemental briefing to address and adjust the language of the proposed Notice of Settlement. *See* Dkt. 109. The Parties then worked together to revise these Notices to provide further explanation regarding the weighting allocation for the settlement shares used in making allocations to participating members of the Settlement Class, which the Parties submitted on April 13, 2023. *See* Dkt. 111. Upon considering the supplemental submission, the Court granted Plaintiffs' motion for preliminary approval on April 19, 2023. Dkt. 112.

Following the Court's preliminary approval order, the Parties worked in earnest to facilitate notice of the Settlement. Edelstein Decl., ¶ 20. However, given the corrupted nature of Tri-Wire's files and that Comcast did not have a direct employment relationship with the Technicians, Comcast was unable to locate certain individuals who previously submitted their opt-in consent forms to join the FLSA portion of this action, the work location or total workweeks for certain Settlement Class Members, and social security numbers for any Settlement Class Members. Dkt. 115, ¶¶ 5-9. Class Counsel diligently worked with Comcast to amend the Settlement to ensure all Participating Settlement Class Members receive a portion of the Net Settlement Amount, and to revise the Notice of Settlement to include an explanation regarding the amendment and a IRS W-4 form to ensure Participating Settlement Class Members receive the wage portion of their individual settlement awards. *Id.*, ¶¶ 10-11.

On August 31, 2023, the Parties submitted a joint motion to amend the preliminary approval order to effectuate these modifications, Dkt. 115, which the Court granted following a hearing, on September 19, 2023. Dkts. 122-123. The Court scheduled the Final Approval Hearing for December 5, 2023. Dkt. 123.

Class Counsel worked with the Court-appointed settlement administrator, Phoenix Class Action Administration Solutions ("Phoenix"), to disseminate the settlement notice and establish the settlement website pursuant to the Settlement and the Court's Preliminary Approval Order. Edelstein Decl., ¶ 21. To-date, there have been no requests for exclusions nor objections to the Settlement, and the Notice Deadline is set to expire on November 21, 2023. *Id.*, ¶ 25. In the coming weeks, Class Counsel will continue to prepare the final approval motion and supporting papers, continue to oversee the settlement notice process, oversee the disbursement of settlement funds, and handle inquiries from Technicians regarding the action and the Settlement. *Id.*

## III. ARGUMENT

### A. District Courts in the First Circuit Routinely Approve One-Third Fee Awards

In a class action settlement, the court may award reasonable attorneys' fees and reimbursement of costs and expenses. Fed. R. Civ. P. 23(h). The First Circuit recognizes two general methods for awarding attorneys' fees in class actions: (1) the "percentage of fund" ("POF") method; and (2) the "lodestar" method. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 307 (1st Cir. 1995); *see also Heien v. Archstone*, 837 F.3d 97, 100 (1st Cir. 2016). The First Circuit has endorsed the POF method as the preferred approach in complex litigation. *In re Thirteen Appeals*, 56 F.3d at 307; *Heien*, 837 F.3d at 100 (POF method is "prevailing praxis"); *O'Connor v. Oakhurst Dairy*, No. 2:14-00192-NT, 2018 U.S. Dist. LEXIS 102244, at *10 (D. Me. June 19, 2018) ("The First Circuit has approved of the POF method as the prevailing approach used in common fund cases.").

Courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a substantial benefit for a class of persons. "The POF method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." *In re Thirteen Appeals*, 56 F.3d at 307 (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). The POF method is more efficient for courts to administer, and also encourages efficient litigation by plaintiffs' attorneys. *Id*. (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1264 (D.C. Cir. 1993)). The First Circuit additionally found that the POF approach "better approximates the workings of the marketplace." *Id.* (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)).

Where the court utilizes a percentage-of-funds approach to assessment of attorney fees, a lodestar analysis is not required. *Curtis v. Scholarship Storage Inc*., No. 2:14-cv-303-NT, 2016

U.S. Dist. LEXIS 70410, at *10-11 (D. Me. May 31, 2016). However, the "court may also, in its discretion, consider a 'lodestar cross check' to gauge the reasonableness of any percentage of fund award." *Bacchi v. Mass. Mut. Life Ins. Co.*, No. 12-cv-11280-DJC, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017).

District Courts in the First Circuit routinely approve one-third fee awards in settled wage and hour class actions. *See, e.g.*, *Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *45 (D. Mass. Sep. 30, 2016). A one-third award is in accord with, albeit slightly higher than, the "20 to 30% range" that this Court has identified as frequently appropriate in settled class actions. *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, No. 11-cv-10230-MLW, 2020 U.S. Dist. LEXIS 33552, at *10 (D. Mass. Feb. 27, 2020) (Wolf, J.); *see also Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-cv-12548-NMG, 2020 U.S. Dist. LEXIS 106469, at *4 (D. Mass. June 17, 2020) ("Standard awards in the First Circuit range from 20% at the low end to 33% at the high end."). However, "[t]he district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *Ark. Teacher Ret. Sys.*, 2020 U.S. Dist. LEXIS 33552, at *44 (internal quotation and citation omitted). These special circumstances exist here.

**B. The Result Achieved, and the Effort, Skill, and Risk Involved, Favor a One-Third Fee Award**

In determining the reasonableness of a POF fee award, this Court and other district courts in this Circuit have considered factors including (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the

amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; and (8) public policy. *Ark. Teacher Ret. Sys*., 2020 U.S. Dist. LEXIS 33552, at *44; *Roberts*, 2016 U.S. Dist. LEXIS 136987, at *34; *Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014). Each of these factors weighs in favor of a one-third fee award.

**1. The significant settlement fund benefits hundreds of workers.**

First, Class Counsel has obtained a significant settlement fund that will provide real benefits to hundreds of workers. The $1,995,000 settlement amount will provide excellent monetary payments for approximately 599 Collective Members and Settlement Class Members. Edelstein Decl., ¶¶ 26, 31-32. The overall average *net* recovery stands at approximately $2,010.02 for each Technician. *Id*., ¶ 32. Technicians with longer tenures will receive relatively higher payments, as the settlement awards are based on the number of workweeks for each Technician. *See* Settlement, ¶ 26. The considerable payments to hundreds of Technicians counsel in favor of the requested fee award.

Additionally, this is not such a large class action recovery that the POF award must be lowered "to avoid giving attorneys a windfall at the plaintiffs' expense." *In re Neurontin Mktg. & Sales Practices Litig*., 58 F. Supp. 3d at 170. As discussed *infra*, Class Counsel are not receiving a windfall here as their lodestar far exceeds the requested fee. This is not a megafund settlement, but rather a wage and hour collective and class settlement where the requested fee is easily justified by the large amount of attorney time and effort involved in prosecuting the action on behalf of the workers. In this circumstance, an upward departure from the customary 20 to 30 percent range is appropriate.

**2. No Class Members have objected.**

To date, Class Counsel have not received *any* objections to the Settlement or the requested fee and cost award. Edelstein Decl., ¶ 25. Indeed, no Class Members have opted out of the Settlement. *Id*. The Notice of Settlement clearly sets forth the amount of fees and costs that Class Counsel are requesting, that Class Counsel will file the instant motion to make such request of the Court, and the Court will determine the fee and cost award at the Final Approval Hearing. *See* Dkt. 115-1, at 7, 14, 17, 21. Despite this full disclosure, no Technicians have voiced any objection to the requested fee. *See* Edelstein Decl., ¶ 25. This reflects a thoroughly positive response by the Technicians, and weighs in favor of a one-third fee award.[5]

**3. The action was prosecuted by skilled, experienced, efficient counsel.**

Plaintiffs and the Technicians are represented by highly skilled and experienced counsel. *See* Edelstein Decl., ¶¶ 17-18, 44-47, 51, 55-59, Exs. 2-4; Vines Decl., ¶ 4, Ex. A. Class Counsel are adept class action litigators, with decades of experience representing workers in wage and hour actions and dozens of successful results in such cases. Edelstein Decl., ¶¶ 44-47, 55-59, Exs. 2-4; Vines Decl., ¶ 4, Ex. A. Class Counsel's skill is confirmed by their diligent prosecution of the claims at issue, which extend across multiple bodies of substantive law, through three years of difficult litigation. This skill and expertise are illustrated by Class Counsel's successful motion practice—Plaintiffs prevailed on the motion for conditional certification; obtained favorable rulings denying Defendant's motion to dismiss and motion for protective order; and successfully obtained preliminary approval of the Settlement. *See* Dkt. 66, 112, 123. Each of these motions required significant briefing and oral argument. *See* Section II, *supra*.

[5] The opt out and objection deadline is November 21, 2023. *See* Dkt. 112, at 3; Dkt. 123. Following the deadline, Class Counsel will provide updated information regarding any opt outs and objections following the close of the opt out and objection period.

Class Counsel's skill and experience led to an efficient result—an excellent settlement that was achieved without the need to further litigate certification issues and engage in a protracted trial. Class Counsel's skillful and efficient prosecution of the claims of the Technicians weighs significantly in favor of the requested fee award.

**4. The action is complex and extended through several years of litigation, with significant risk of non-payment.**

This action involves a conditionally certified FLSA Collective, five putative Rule 23 classes, and four Named Plaintiffs. It encompasses hundreds of workers. Plaintiffs bring claims under federal law, and additionally under Maine, Massachusetts, New Hampshire, New Jersey, and Pennsylvania law. The Complaint is a lengthy and complex pleading. *See* Dkt. 1. Lengthy and extensive discovery requests were served by Comcast for each of the four Named Plaintiffs. This action involved considerable motion practice. All of these factors illustrate that this is a complex matter, even in comparison to other wage and hour collective and class actions.

The litigation was also lengthy. Plaintiffs filed this action on May 7, 2021, over two years to the date of this motion. Moreover, Class Counsel undertook all the risk of this litigation on a completely contingent fee basis, expending time and incurring expenses with the understanding that there was no guarantee of compensation or reimbursement. Edelstein Decl., ¶ 54; Vines Decl., ¶ 16. If they were unsuccessful in obtaining a positive result, Class Counsel would not receive *any* compensation for their large investment of time and resources in prosecuting the claims. The successful result obtained after multiple years of complex litigation, in the face of considerable risk of non-payment, further counsels in favor of a one-third fee award.

**5. Class Counsel have devoted thousands of hours to this case.**

As set forth in Section II, *supra*, and the attached declarations of Class Counsel, this action

required large amounts of attorney time beginning at the pleadings stage, through conditional certification, extensive discovery practice, mediation, and additional motion practice, and continuing through settlement, preliminary approval, overseeing the settlement notice process, and final approval. By any measure, this is not an action that settled quickly in the early stages of the case. Rather, it has been intensively litigated, requiring the commitment of thousands of attorney hours. This extensive time commitment weighs heavily in favor of the requested fee award.

**6. Courts routinely award one-third fee awards in wage and hour class action settlements.**

As discussed above, courts in this Circuit and elsewhere routinely approve one-third fee awards in successful wage and hour settlements. *See, e.g.*, *Roberts*, 2016 U.S. Dist. LEXIS 136987, at *45 (one-third fee, reflecting a lodestar multiplier of nearly 2, reasonable in light of the counsel's efforts in wage and hour collective and class action); *O'Connor*, 2018 U.S. Dist. LEXIS 102244, at *10 ("A one-third contingent fee is common in wage-and-hour cases."); *Curtis*, 2016 U.S. Dist. LEXIS 70410, at *10-11 (same); *Scovil v. FedEx Ground Package Sys*., No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *21 (D. Me. Mar. 14, 2014) (taking judicial notice that contingent fees of one-third are common in wage and hour class action settlements). "'Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.'" *Romero v. Producers Dairy Foods, Inc*., No. 1:05-cv-0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 13, 2007) (awarding one-third fee award in wage and hour class action, and quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)).[6]

[6] S*ee also In re Loestrin 24 Fe Antitrust Litig*., No. MDL No. 2472, 2020 U.S. Dist. LEXIS 125746, at *50 (D.R.I. July 17, 2020) (one-third fee award in antitrust action is "fair, reasonable and appropriate compensation"); *Bennett v. Roark Capital Grp., Inc*., No. 2:09-cv-00421-GZS, 2011

In *Soto, et al. v. O.C. Commc'ns., Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304, 305 (N.D. Cal. Oct. 23, 2019), the Northern District of California recently awarded BMPC and SWCK one-third fee awards in hybrid FLSA/Rule 23 wage and hour class and collective actions. In *Soto*, District Judge Vince Chhabria noted that the one-third award was "justified under the common fund doctrine, the range of awards ordered in this District and Circuit, the excellent results obtained, the substantial risk borne by Class Counsel in litigating this matter, the high degree of skill and quality of work performed, the financial burden imposed by the contingency basis of Class Counsel's representation of Plaintiffs and the Classes and Collective, and the additional work required of Class Counsel to bring this Settlement to conclusion." *Id*. (Dkt. 305).

These cases confirm that in wage and hour class action settlements, which typically do not involve megafund amounts that result in large multipliers over lodestar, a fee award of one-third is standard and appropriate. Class Counsel here have achieved a robust settlement in a difficult wage and hour action, and the requested one-third fee is reasonable and should be approved by the Court.

**7. Public policy supports the requested fee award.**

Substantial fee awards encourage attorneys to take on risky cases on behalf of clients who cannot pay hourly rates and would therefore not otherwise have realistic access to courts. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue here. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("[P]rivate suits provide a significant supplement to the limited resources available to [government

U.S. Dist. LEXIS 48094, at *6 (D. Me. May 4, 2011) (awarding "customary one-third fee" in settled WARN Act class action); *Kondash v. Citizens Bank*, No. 18-cv-00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588, at *18 (D.R.I. Dec. 23, 2020) (one-third fee award in TCPA action, amounting to $612,5000, is "fair, reasonable and appropriate compensation for the work done by Class Counsel to create the Settlement Fund").

enforcement agencies] for enforcing [public protection] laws and deterring violations."). By incentivizing plaintiff's attorneys to take on risky, high-stakes, and important litigation, and devote themselves to it aggressively and fully, fee awards serve an important purpose and extend the access of top legal talent to constituencies such as low-wage workers who would otherwise never be able to confront employers, who are themselves represented by top-rated attorneys.

In this case, although the risks were front and center, Class Representatives and Class Counsel committed themselves to developing and pressing the legal claims to enforce the employees' rights and maximize the class and collective recovery. Accordingly, a one-third recovery for fees is appropriate.

### C. A Lodestar Cross-Check Confirms that a One-Third Fee Is Reasonable

First Circuit courts have the discretion to employ (or decline to employ) a "lodestar cross-check" on a request for a percentage of the fund fee award. Though not required, this Court has found that such a cross-check is "useful" in evaluating the reasonableness of a POF fee award. *Ark. Teacher Ret. Sys*., 2020 U.S. Dist. LEXIS 33552, at *47-48.[7] Class Counsel's accompanying declarations provides a summary of the lodestar, time and hourly rates, as well as descriptions of the nature of work performed.[8] *See* Edelstein Decl., ¶¶ 47-64, Ex. 1; Vines Decl., ¶¶ 13-15. The hourly rates supplied are Class Counsel's customary rates for purposes of lodestar cross-checks in common fund cases. Edelstein Decl., ¶ 51; Vines Decl., ¶ 9.

The cross-check more than supports the requested fees. Class Counsel has spent over 2,253

---

[7] *See also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (noting that while "primary basis of the fee award remains the percentage method," lodestar "may" be useful, but that it is "merely a cross check" and "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case").

[8] Due to the amount of privileged information contained in the actual hourly billing records, Class Counsel do not include those detailed records with this filing but can easily provide them for this Court's *in camera* review should the Court wish to review them.

hours litigating this action, for a current aggregate lodestar of over $1,384,477, not including all the work remaining to bring the Settlement to a close. Edelstein Decl., ¶¶ 48, 52-53; Vines Decl., ¶¶ 9, 12. This amount *far exceeds* the requested fee, resulting in a 0.48 negative multiplier. Edelstein Decl., ¶ 53. The lodestar confirms that the one-third fee award is very reasonable. *See, e.g., Zamora v. Lyft, Inc*., No. 3:16-cv-02558-VC, 2018 U.S. Dist. LEXIS 166618, at *11 (N.D. Cal. Sep. 26, 2018) (finding that "lodestar multiplier of 0.86x strongly supports the 33⅓% fee award").

## IV. CLASS COUNSEL'S COSTS SHOULD BE APPROVED

Rule 23(h) provides that a court may award reasonable attorney costs, and the FLSA and state wage and hour laws also provide for the reimbursement of costs. *See, e.g.*, 29 U.S.C. § 216(b); Mass. Ann. Laws ch. 149, § 150. First Circuit courts routinely order reimbursement of out-of-pocket costs in the context of class action settlements. *See, e.g., O'Connor*, 2018 U.S. Dist. LEXIS 102244, at *10 (ordering $50,000 for reimbursement of attorneys' costs in settled wage and hour action); *Veilleux v. Maine*, No. 1:16-cv-571-LEW, 2020 U.S. Dist. LEXIS 210895, at *7 (D. Me. Nov. 9, 2020); *Bacchi*, 2017 U.S. Dist. LEXIS 184926, at *17 (ordering reimbursement of litigation expenses of $1,533,575.85 on the basis that the court "cannot say that such expenses, either in whole or in any particular part, are unreasonable").

Here, the Notice advised that Class Counsel may seek up to $75,000 in out-of-pocket costs. *See* Settlement, ¶ 2.c. Class Counsel's costs currently stand at $75,000 in total for BMPC and SWCK. *See* Edelstein Decl., ¶¶ 65-69; Vines Decl., ¶¶ 17-20. The expenses incurred in this litigation to date are described in the accompanying declarations. *See id*. These expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as FLSA notice administration costs, mediation fees, copying and printing costs, attorney travel,

expert costs,[9] and computerized research. Such costs are routinely found to be reasonable and awarded reimbursement by federal courts. *See, e.g.*, *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983) (out of pocket expenses for transportation, lodging, parking, food, telephone expenses can be reimbursed as "reasonable and necessary costs and expenses"); *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 244 (D.R.I. 2012) (awarding reimbursement of actual costs including filing fees, mediation, travel expenses, computerized legal research, printing, and other expenses).

All of these expenses were reasonable and necessary for the successful prosecution of the action, and pursuant to the terms of the Settlement, Defendant does not object to the request for costs up to $75,000. Further, no Class Member has objected to the request for costs. Edelstein Decl., ¶ 70. Class Counsel therefore requests reimbursement of costs in the amount of $75,000.

## V. THE SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit."

*Scovil*, 2014 U.S. Dist. LEXIS 33361, at *22. Service awards "are customary and appropriate in recognition of a named plaintiff who has served, as is the case here, as the class representative through extensive litigation and has assisted class counsel, by, among other things, obtaining critical documents, reviewing filings and otherwise assisting class counsel in the prosecution of [the] case." *Bacchi, 2*017 U.S. Dist. LEXIS 184926, at *17-18. "In determining whether a service award is warranted, courts consider the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions,

[9] Plaintiffs also incurred bankruptcy attorney consultation costs for analyses on the impact of bankruptcy proceedings on the potential damages and award in this action, as well as representing the Settlement Class in Tri-Wire's bankruptcy hearing. Edelstein Decl., ¶ 69; Vines Decl., ¶ 20.

the amount of time and effort they have expended in pursuing the litigation, [] and any negative effects that they have risked." *Scovil*, 2014 U.S. Dist. LEXIS 33361, at *22 (internal citation omitted). In *Scovil*, a wage and hour action under the FLSA and Maine law, the court approved incentive awards from $15,000 to $20,000, recognizing that service awards of $10,000 to $15,000 are standard in wage and hour cases, and on occasion reach "$20,000, $30,000 and higher." *Id*.

Here, Plaintiffs seek service awards of $5,000 each for the four Named Plaintiffs to compensate them for the critical roles they played in this litigation, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Technicians. Each Named Plaintiff specifically agreed to, and did, put the Class and Collective's interests above themselves. They each cooperated with Class Counsel, and actively participated in the lawsuit. *See* Declaration of Javier Rodriguez, ¶¶ 4-15; Declaration of Jorge Esquilin, ¶¶ 4-15; Declaration of Harry Charcalis, ¶¶ 4-15; Declaration of Darren Couturier, ¶¶ 4-15. Each Named Plaintiff expended substantial time assisting in the prosecution of the claims in this protracted litigation, providing information to counsel, assisting in the drafting of pleadings and other documents, responding to discovery, drafting declarations, participating in settlement decisions, appearing at the preliminary approval hearing, and regularly discussing the facts and proceedings with Class Counsel. *See* Declaration of Javier Rodriguez, ¶ 14 (20 hours); Declaration of Jorge Esquilin, ¶ 14 (20 hours); Declaration of Harry Charcalis, ¶ 14 (25 hours); Declaration of Darren Couturier, ¶ 14 (25 hours); see also Edelstein Decl., ¶ 10 (each named plaintiff responded, as well as provided supplemental responses, to significant written discovery). As a result of these efforts, hundreds of Technicians will receive the considerable recoveries discussed herein.

Moreover, pursuant to the Settlement, each Named Plaintiff has agreed to a general release of their claim, which is broader than the other Settlement Class and Collective members.

Settlement ¶ 13. The requested Service Awards are also reasonable in light of the significant reputational risks each Named Plaintiff took by publicly affiliating themselves as Named Plaintiffs in a wage and hour action against their employer. *See See* Declaration of Javier Rodriguez, ¶¶ 8, 15; Declaration of Jorge Esquilin, ¶¶ 8, 15; Declaration of Harry Charcalis, ¶¶ 8, 15; Declaration of Darren Couturier, ¶¶ 8, 15. This substantial sacrifice supports the incentive awards sought here. *See Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556, at *40-43 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $10,000 and $15,000 to class representatives and noting, *inter alia*, potential adverse actions by their employer or being "blacklisted" for future employment). For all of these reasons, the requested Service Awards are reasonable and should be approved.

## VI. CONCLUSION

The Named Plaintiffs and Class Counsel have expended considerable time and effort through several years of intensive litigation. Class Counsel have litigated the case with great skill and brought considerable expertise to the prosecution of the Technicians' claims. The excellent Settlement is a result of this hard work. The requested fees and costs are quite reasonable in light of these significant efforts, and Plaintiffs respectfully submit that the Court should grant this motion in its entirety.

Dated: November 20, 2023

*<u>/s/ Ori Edelstein</u>*

Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

mlim@schneiderwallace.com

Shanon J. Carson
Camille Fundora Rodriguez
Lane L. Vines
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
scarson@bm.net
crodriguez@bm.net
lvines@bm.net

Jason M. Leviton (MA Bar No. 678331) BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
jason@blockleviton.com

*Attorneys for Plaintiffs, the Collective, and Settlement Classes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on Monday, November 20, 2023, a copy of this document was served by electronic filing on all counsel of record.

*/s/ Ori Edelstein*
Ori Edelstein